IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 09-718 |
| FREDERICK PHILLIPS | : | |
| | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                     **AUGUST 27, 2020**

      Frederick Phillips seeks a compassionate release from his 228-month prison sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 20.) He argues that his underlying medical conditions and his inability to maintain social distancing where he is incarcerated pose a risk of serious illness or death in light of the global pandemic caused by COVID-19. For the reasons that follow, Phillips's Motion will be denied.

**I.      BACKGROUND**

      On November 10, 2009, a federal grand jury charged Phillips with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (ECF No. 1.) The facts surrounding the charge are "brutal." (Sentencing Hr'g Tr. 42, ECF No. 52.) On June 5, 2009, when police officers responded to a 911 call about gunshots at a home in Philadelphia, they observed Phillips kneeled over a man on the ground, striking him in the face with a firearm. (Presentence Report ("PSR") 4-5 (on file with Court).) The victim was 47 years old and wheelchair bound. (*Id*. at 5.) Phillips had attempted to rob the victim at his home and "bludgeoned [the victim] with his operable Smith & Wesson 9mm pistol." (Sentencing Hr'g Tr. 42.) After Phillips was arrested, drugs, drug paraphernalia and a large sum of money were

recovered from the victim's residence. (PSR 5.) At the time Phillips committed this crime, he was on parole for a drug trafficking and conspiracy offense. (*Id*.)

On May 19, 2010, Phillips entered a plea of guilty to the firearm charge. (ECF No. 34.) On August 16, 2010, Phillips was sentenced by the Honorable Stewart Dalzell to 228 months' imprisonment and five years of supervised release. (ECF Nos. 45, 46.) Defendant faced a maximum term of life in prison, a mandatory minimum term of 15 months' imprisonment, and a guideline range of 188 to 235 months' imprisonment. (PSR 20.) The guideline range was based, in part, on the fact that Phillips was deemed an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, for a prior rape conviction and three prior convictions for drug felonies.

Specifically, in 1995, Phillips trespassed into a victim's home at night and violently raped her, "forcing his penis into her mouth, rectum, and vagina without her consent." (PSR 9.) Phillips then threatened to injure the victim if she told anyone about the incident. (*Id*.) He was convicted of rape, involuntary deviate sexual intercourse, criminal trespass, indecent assault, false imprisonment, and indecent exposure. (*Id*.) He was sentenced to 5 to 10 years' imprisonment for these crimes. Just two years later, in 1997, Phillips entered a plea of guilty to possessing crack cocaine with intent to deliver and was sentenced to 9 to 18 months' imprisonment. (*Id*. at 10.) Phillips was also convicted in 2002 of: possession with intent to deliver and criminal conspiracy. (*Id*. at 11.) He was sentenced to 5 to 10 years' imprisonment for these crimes. (*Id*.) After serving this prison sentence, and while still on parole, Phillips committed the offense for which he is currently incarcerated and for which he seeks early release. (*Id*.)

Phillips is 48-years old. He has served approximately 168 months (73%) of his 228-month prison sentence. He is set to be released in August 2025. *See*

https://www.bop.gov/inmateloc/ (last accessed August 26, 2020).  He is currently housed at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix").  Phillips requests that his prison sentence be reduced to time served under 18 U.S.C. § 3582(c)(1)(A), or in the alternative, that his term of supervised release be modified to include home confinement for the duration of the time remaining on his prison sentence.  He argues that extraordinary and compelling reasons justify his release because his underlying medical conditions place him at a high risk of serious illness or death if he were to contract COVID-19, and because of the conditions at FCI Fort Dix, where his risk of exposure is high.  He also contends that he is no longer a threat to public safety, as evidenced by his having committed only one minor disciplinary infraction while at FCI Fort Dix.  The Government opposes the Motion.

## II.     DISCUSSION

### A.     Applicable Law

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment on the defendant's motion after the defendant has exhausted his administrative remedies.  In relevant part, § 3582(c)(1) provides that a court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[1]

---

[1] To exhaust administrative requirements, the statute requires that a defendant first "request" that the BOP file a motion with the court for compassionate release on his behalf. Only after the defendant has exhausted the administrative rights to appeal the BOP's denial of

The phrase "extraordinary and compelling reasons" is not defined by the statute, but instead incorporates the commentary to the policy statement contained in § 1B1.13 of the United States Sentencing Guidelines. *See United States v. Handerhan*, 789 F. App'x 924, 925 (3d Cir. 2019) (citing *United States v. Barberena*, 694 F.3d 514, 521 n.10 (3d Cir. 2012). Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), that—
>
> > (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> > (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides four categories of reasons that qualify as extraordinary and compelling: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; or (4) "other reasons" to be determined by the Director of the BOP. As a result of amendments to § 3582(c)(1)(A) by the First Step Act, courts now conclude that the catch-all category of "other reasons" applies not only to the BOP Director, but also to courts. *See United States v. Towel*, No. 17-519-6, 2020 WL 2992528, at *3 (E.D. Pa. June 4, 2020); *United States v. Rodriguez*, No. 03-271, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting that the Sentencing Commission's "old policy statement provides helpful

---

that request, or after 30 days has passed, whichever is earlier, may the defendant then file his own motion with the court. 18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (stating that remand of request for compassionate release to district court for substantive review in light of COVID-19 pandemic would be "futile" because the defendant had not complied with the exhaustion requirements under Section 3582). Phillips has complied with the exhaustion requirements of § 3582(c)(1)(A). He has submitted a letter from the Warden of FCI Fort Dix denying his request. (*See* Def.'s Mot. Ex. A, ECF No. 120 (under seal).)

guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)").

A legal standard for reviewing compassionate release requests in the context of the COVID-19 pandemic may be distilled from a synthesis of the statute, the Sentencing Guidelines, and recent court decisions. Courts faced with motions for compassionate release in light of COVID-19 consider: (1) whether "extraordinary and compelling" reasons exist to reduce the defendant's sentence; (2) whether the defendant is a danger to the community under § 3142(g); and (3) whether the § 3553(a) sentencing factors support a sentence reduction. *See United States v. Pabon*, -- F. Supp. 3d --, No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020); *United States v. Mathe*, No. 14-528, 2020 WL 3542177, at *3 (E.D. Pa. June 30, 2020); *United States v. Hannigan*, No. 19-373, 2020 WL 4015238, at *3 (E.D. Pa. July 16, 2020).

To establish "extraordinary and compelling reasons," courts have generally required defendants to show two things: (1) advanced age or a serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed. *United States v. Somerville*, -- F. Supp. 3d --, No. 12-225, 2020 WL 2781585, at *8 (W.D. Pa. May 29, 2020) (citing cases).

   B.   **Extraordinary and Compelling Reasons**

Phillips alleges that he suffers from numerous medical conditions that place him at a high risk of developing serious complications if he were to contract COVID-19. Specifically, he contends that he suffers from recurrent bronchitis, obesity, hypertension, high cholesterol, and prediabetes. In support of his Motion, Phillips provides the Declaration of Dr. Drew Kotler, a Fellow of Hospice and Palliative Care at the University of Pennsylvania, who reviewed "limited

medical records" for Phillips and did not examine him. (Kotler Decl., Def.'s Mot. Ex. B.) Dr. Kotler opined that, due to Phillips's underlying medical conditions, he "has multiple risk factors that increase his risk of morbidity and mortality related to COVID-19." (*Id.*) Phillips also provided the medical records maintained by the doctors at FCI Fort Dix. (Fort Dix Med. Records, Def.'s Mot. Ex. C.)[2]

The CDC recognizes that the following underlying medical conditions place individuals at a greater risk of severe illness from COVID-19: cancer, chronic kidney disease; chronic obstructive pulmonary disease; an immunosuppressed state as a result of an organ transplant; obesity (body mass index "BMI" of 30 or higher); serious heart conditions; sickle cell disease; and type II diabetes.[3] Phillips presents with only one of these high risk factors: obesity. In March of 2020, his BMI was 37.4. (Fort Dix Med. Records.) The CDC also states that, based on limited available data, individuals with "the following conditions *might* be at an increased risk for severe illness from COVID-19": asthma; cerebrovascular disease; cystic fibrosis; hypertension; an immunocompromised state; neurologic conditions; liver disease; pregnancy;

---

[2] Although we consider Dr. Kotler's medical opinion, we do not assign it significant weight for two reasons. First, although Dr. Kotler indicates that he based his conclusion on the "limited medical records" provided to him, he does not indicate what records he reviewed and whether his review included the over 100 pages of medical records spanning over 10 years that were provided to the Court. In addition, Dr. Kotler never examined Phillips. A review of Phillips's medical records from the BOP reveals that in the last year, Phillips's predominant health concerns were esophageal reflux and back pain. (Fort Dix Med. Records.) In late April of 2020, he had an appointment for a recurrent dry cough, and was prescribed antibiotics. The treating BOP physician, Dr. Pradip Patel, indicated that the cough may have been related to Phillips's esophageal reflux and possible sleep apnea. (*Id.*) After a March 2020 visit, Dr. Patel noted that Phillips continued to ignore his medical recommendations for the treatment of his esophageal reflux. (*Id.*)

[3] *See People of Any Age with Underlying Medical Conditions, Centers for Disease Control and Prevention* (accessed August 26, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

pulmonary fibrosis; smoking; thalassemia; and type 1 diabetes.[4]  Phillips presents with only one of these conditions:  hypertension.  However, a review of Phillips's medical records indicates that his high blood pressure has been well-controlled with medications in the prison setting.

Even if Phillips's particular combination of medical conditions, taken together, place him at a high risk, as Dr. Kotler opines, Phillips would not be entitled to a compassionate release due to his history of violence and because he has not demonstrated a more than mere speculative risk of exposure to COVID-19 at FCI Fort Dix.

At the time Phillips filed his Motion, there were approximately 20 to 25 inmates testing positive for COVID-19 at FCI Fort Dix, all of whom were located in the minimum-security camp at the prison.  *Wragg v. Ortiz*, No. 20-5496, 2020 WL 2745247, at *22 (D.N.J. May 27, 2020). Phillips is located at the low-security section of FCI Fort Dix, and not at the minimum-security camp.  (Gov't Resp. 14, ECF No. 124.)  In addition, the BOP has "implemented [at FCI Fort Dix] a multi-phased operational plan called the 'Action Plan,' which seeks to 'mitigate the spread of COVID-19' among inmates and staff."  *Wragg*, 2020 WL 2745247, at *2.  Measures include quarantining new inmates, suspending legal and social visitation, limiting inmate movement, and screening individuals who enter the prison.  *Id*. at *3.  In addition, officials at FCI Fort Dix have designated quarantine and isolation areas, installed 300 additional soap dispensers, required staff to wear full personal protective equipment, provided all staff and inmates with surgical masks, and implemented Abbott test kits, which permit the prison to test approximately 75 inmates for COVID-19 in a 24-hour period.  *Id*. at *3-4.[5]

---

[4] *See People of Any Age with Underlying Medical Conditions, Centers for Disease Control and Prevention* (accessed August 26, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[5] Under these protocols, "[i]f an inmate were to complain about symptoms associated with COVID-19, he would immediately be escorted to the health services building and examined

The efforts made by the BOP at FCI Fort Dix have proven successful. As of the date of this Memorandum, there are no cases of COVID-19 among inmates or prison staff. *See* https://www.bop.gov/coronavirus/ (last accessed August 26, 2020). With no cases of COVID-19 at FCI Fort Dix, the risk of exposure is speculative. *See*, *e.g.*, *United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying request for compassionate release because, *inter alia*, "there are no reported cases of COVID-19 at Defendant's facility"); *United States v. Quinones*, No. 13-83, 2020 WL 4529365, at *6 (W.D.N.Y. Aug. 6, 2020) (concluding that even though defendant "falls firmly in the high-risk group" he has "failed to show that FCI Elkton's current plan and efforts to combat COVID-19 are inadequate" where at the time, there were 53 inmates and 2 staff infected with COVID-19).

We understand Phillips's concern that maintaining social distancing is not possible at FCI Fort Dix. However, considering the extensive measures implemented by the BOP to control the spread of COVID-19 and that those measures have allowed for low to zero transmission rates, the risk of Phillips contracting COVID-19 is very low. "[G]eneralized COVID-19 fears and speculation" are insufficient to warrant release. *United States v. Upshur*, No. 18-124-2, 2020 WL 3128026, at *2 (E.D. Pa. June 12, 2020); *see also Raia*, 954 F.3d at 597 (cautioning that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"). Phillips has not demonstrated extraordinary and compelling reasons to justify granting him relief under 18 U.S.C. § 3582(c)(1)(A)(i).

---

by a clinician." *Wragg*, 2020 WL 2745247, at *4. "If COVID-19 was suspected, he would be tested immediately using the Abbot machine; and if positive, he would be immediately isolated in [housing unit] 5851." *Id*.

## C. Danger to the Community and Sentencing Factors under § 3553(a)

Even if Phillips were able to demonstrate extraordinary and compelling reasons for his early release, his Motion would still be denied. We must consider whether Phillips is a danger to the community under § 3142(g), and whether the § 3553(a) sentencing factors support a sentence reduction. *See* U.S.S.G. § 1B1.13. Both considerations support our conclusion that early release is not warranted.

Section 3142(g) sets out the factors that courts must consider in deciding whether to release a defendant pending trial. The factors relevant to whether the defendant poses a danger to the community include: "the nature and circumstances of the offense," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1), (3), (4).

These factors weigh heavily against Phillips's release. The present crime itself was "brutal." (Sentencing Hr'g Tr. 42.) In an attempted robbery, Phillips "bludgeoned" a wheelchair-bound victim with an operable pistol. (*Id*.) He was charged with, and pleaded guilty to, possession of a firearm by a convicted felon. Phillips's callousness is exhibited not only by the violent nature of the offense but also by the fact that he took advantage of his victim's disability to accomplish the crime. The "history and characteristics" of Phillips also weighs against release. Phillips's criminal history contains a trespass and violent rape of a 20-year-old victim, who Phillips later threatened to silence. Upon his release from prison, he was twice convicted of possessing crack cocaine with the intent to deliver. The violent gun crime for which he is currently serving was committed while he was still on parole for one of his drug convictions. Phillips's criminal history reveals a tendency towards recidivism and violence and as the Government calls it, a "flagrant disregard for the law." (Gov't Resp. 23.)

Phillips contends that he is no longer a threat to public safety because he is a model inmate who has engaged in vocational and training programs at FCI Fort Dix and who has only incurred one minor disciplinary infraction. While we acknowledge his efforts while incarcerated, we cannot ignore his violent past and extensive criminal history. *See United States v. Baye*, No. 12-115, 2020 WL 2857500, at *10 (D. Nev. June 2, 2020) (finding that the defendant is a danger to the community despite zero disciplinary infractions during his prison sentence because "despite numerous crimes and sentences, [he] always quickly recidivated, committing further dangerous crimes"). Phillips continues to pose an ongoing risk to the community.

Our consideration of the § 3553(a) sentencing factors further confirms our conclusion that granting Phillips a compassionate release is not appropriate.[6] As we noted above, the nature and circumstances of the crime were violent. *See* 18 U.S.C. § 3553(a)(1). Even at the time of sentencing, despite Phillips's acceptance of responsibility, Judge Dalzell handed down a

---

[6] The sentencing factors that courts consider when imposing a sentence under § 3553(a) include:
>    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>    (2) the need for the sentence imposed--
>        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>        (B) to afford adequate deterrence to criminal conduct;
>        (C) to protect the public from further crimes of the defendant; and
>        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>    (3) the kinds of sentences available;
>    (4) the kinds of sentence and the sentencing range established for--
>        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>        . . .

18 U.S.C. § 3553(a).

sentence that was at the top of the guideline range due to the nature of Phillips's crime and his criminal history. (Sentencing Hr.'g Tr. 41-42 ("Palpably, society must protect itself from recidivists like the defendant. While he is certainly a candidate for an upward variance, given his age at the time of his anticipated release, we stop short of imposing a sentence above the high end of the Advisory Guideline range.").) The sentence imposed of 228 months' imprisonment reflects the serious nature of his crime and the fact that Phillips is a career criminal. It also serves to deter other career criminals who might consider engaging in future criminal conduct. *See id*. § 3553(a)(2). Finally, Phillips still has five years left of his sentence to serve. He has not demonstrated that granting him a release now when he has served only 73% of his prison sentence would promote "respect of the law" and "adequate deterrence." *See id*. §§ 3553(a)(2)(A) and (B).

### III.  CONCLUSION

For the foregoing reasons, Phillips's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) will be denied. An appropriate order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**